Our final case for this morning is A.D. v. Credit One Bank. Mr. Ancorn. Good morning. A young woman was deprived of her day in court because she helped her mother buy a $10 juice smoothie when she was 14 years old. Her and her mother went to a local mall in February of 2014, and the mother had pre-ordered a Jamba Juice, which is their usual custom. Right. Could I ask you just parenthetically, this may not matter since no one's made anything of it, why is this case in Illinois? The bank is a national bank. They do business everywhere. One of our original perspectives was an Illinois resident, but ended up not making the case. I would like you to focus on the language in the credit card authorized user provision, which is actually a fairly long paragraph. I take it your point is that A.D. was not an authorized user just because she was holding the card, because there are all these other things in the paragraph that need to be satisfied. By designating an authorized user who is at least 15 years of age, you understand all these things, one through six, and you have to pay an authorized user fee for issuing a card in that person's name. So the bank argues that really, literally, I could give my six-year-old granddaughter my credit card and she would become an authorized user on the account. And waive her right to a jury trial, et cetera, et cetera. Right. And not parenthetically, but also bound by their choice of Nevada law, we don't think any of that, you don't get into any of that. They created the term authorized user, as is common in commercial contracts, they capitalized that term because they wanted to make it a unique variable, we call it in computer science, but to govern the terms of that contract. They defined what that authorized term meant. Authorized user means the following, requires the following circumstances. The key of which is you have to be at least 15, for here, because it's a pretty bright rule. She meets none of those, Appellant A.D. meets none of those criteria, and therefore she just can't, by the terms of the contract itself, be an authorized user. Despite the fact that she's got the right under both Nevada and California law, but specifically under Nevada law, to disaffirm the contract when she reaches the age of majority, which she's done multiple times. Didn't the judge hear the applied federal law, right? It's, I believe, well, the common law doctrine of the Seventh Circuit of the implied benefits estoppel, or direct benefit estoppel. The question of whether a non-signatory is bound by the terms for an arbitration agreement must be settled by state law. That's our case. Well, there's also the Supreme Court, in 2009, to Judge Kenney's point, and Arthur Anderson against Carlisle, saying neither provision of the FAA purports to alter background principles of state contract law regarding the scope of agreements, including the question of who is bound by them, which I read as indicating that this is an issue of state law. I think that's true as well. I mean, it may not matter. I mean, I'm not sure whether... Well, I think it's waived, though. I mean, you didn't argue that the judge should not apply federal law as to whether or not... Perhaps I'm misunderstanding, but with respect to her lack of majority, and therefore her lack of... What sort of notice was required? What sort of notice was required to someone who is a non-signatory to the contract to make them bound? Yes. That is probably an issue of federal common law. And the arbitration cases seem to create and recognize that there is such a thing as federal common law in these kinds of areas, because you can't really get into state law unless you have a contract there in the first place. So some of the things with respect to, for example, unconscionability, with respect to contract formation, depends upon state law. But after that, with equitable doctrines particularly, those seem to be... At least the appellate cases seem to be uniform in looking to federal sources of effectively federal common law. I think this has gotten very confused because the Supreme Court has made it clear that there's only so much room for state law to operate without conflicting with the policy behind the Federal Arbitration Act. And so it's been found to preempt a number of state laws. You can't have a contract affecting interstate commerce that says there will be no arbitration in this. You can't have a state law that says there will be no arbitration of, say, employment contracts when the FAA has said, no, sorry, employment contracts are enforceable. That doesn't go to the question whether an employment contract was formed, who is a party to that contract, who are third-party beneficiaries, whatever other contract issues there are. But I think the courts have been somewhat confused about where preemption is kicking in and where it's really just plain old question of state law. But I wonder why does it matter here? I mean, I thought you'd argued that whether it was California or Nevada or federal common law, it all boiled down to the same thing anyway. At the end of the day, that's pretty typical. Well, the estoppel is the same? There's not a whole lot under this. Well, again, direct benefits estoppel is extremely muddled because everyone seems to agree that there is such a thing. Your Honor's opinion was the one in 2005 that recognized it in this circuit, specifically the direct benefits estoppel. But nobody seems to agree when there seems to be some consensus as to what a direct benefit is versus an indirect benefit. Everyone agrees indirect, not good enough, direct, good enough. But then that gray area of what sort of fact patterns go through which door, that's all over the place. And I don't think it's amenable to strictly saying whether it's state law or federal law. We have to get down into the weeds and figure out whether these sorts of benefits are, in fact, direct. And ultimately, at the end of the day, because it's an equitable doctrine, we ask ourselves, is this fair? Appellant would strongly suggest that it is just not fair. Helping her mother buy one juice smoothie, overpriced as it may be at $10.98, is certainly not enough. Is that what the thing costs? That is an expensive smoothie. It is indeed, Your Honor. Buy one or two. I'm sorry? Did she buy one or two? I'm not being facetious, really. Did she buy one for herself or did she buy one for her mother and herself? I don't remember. And she didn't remember at the time of her deposition. And I don't believe the attorney for the bank asked her specifically. She may have. It may have been two mediums instead of one large or one extra large. So your view essentially is she was acting as her mother's agent. Correct. The mother told her to do something, take my card, go finish this purchase for me. And that's pretty important because the mother starts the purchase. The analogy I used down at the district court was like going to a restaurant and ordering the meal. You make the decisions about what you want to eat, but then you give, typically, if it's a sit-down restaurant, you give your card to the server. The server runs and actually does the physical point of sale. And that's a distinction I think that's meaningful here because the mother starts the financial transaction and the daughter is doing nothing more than transporting it to the store, whether her mother is present in the store, whether her mother is parking the car. I don't think that fact should turn on whether she's bound by the contract or not years later. It's that distinction helping carry out a transaction. Instead of, for example, taking, hey mom, can I borrow your card and lending it to her and then she goes to the rest of the mall and does whatever damage teenage girls do to credit cards and comes back with a whole host of purchases that her mother has no idea about. That circumstance, that scenario, whether she actually is a user, small u, we commonly understand someone who uses the card. That's not you. And that's not this, number one, that's not this fact, but I think that would probably be much more close to the idea of obtaining a direct benefit of the contract. Here it was her mother's decision, too, to use, for example, credit versus cash. The mother said, or select among the credit options. The testimony was clear that the mom had more than one credit card at the time. So she said, you know, take this one and go get the juice smoothies instead of here's a $20 bill or something else. Okay. Thank you. Mr. Schoenfeld. Thank you, Your Honor, and may it please the Court. I'd like to address first the choice of law question under the direct benefits estoppel. I think this Court's recent opinion in Shurer makes clear that as you are applying the five categories of sort of under Arthur Anderson, you need to apply state law. And the state law that the parties have briefed here is Nevada, and Nevada makes clear what it requires for application of direct benefits estoppel. Well, there's also California as a candidate. Can I back you up a little bit? Sure. Looking at the complaint, it begins by saying, A.D., by and through her guardian ad litem, Judith Serrano. And then it goes on and talks about, you know, the phone calls. And so on. The reason I point that out, and I know this hasn't really been raised on appeal, but it's very troublesome to me. You did not make an arbitration demand until very late in the day, and I understand that your reason for that was you said, oh, you know, we didn't even know this might be arbitrable until the depositions were taken. But I find that very hard to believe because you've got you're the bank, you've got Judith Serrano, clearly the adult in the question. It seems to me from the day this complaint was filed, you knew that there was an arbitration possibility. Well, Credit One raised arbitration as an affirmative defense when it answered. The question about whether to assert arbitration only arose because there was a question as to whether A.D. But you left it alone. You know, we have cases that say this entire right to have something arbitrated can be waived. That's certainly right in the district court. But having and forcing people to spend resources for two years in a court and then coming along and saying, oh, you know, we've decided to arbitrate is very wasteful. That's certainly right, Your Honor, but the district court addressed this very issue and determined that Credit One had preserved its ability to arbitrate. I understand the district court said that. I'm not sure I agree with what the district court said, but I do know that's what he said. Sure. I mean, plaintiff hasn't appealed that, obviously. We're here on 1292B, and there's a specific legal question for the court to address. The case comes up, though. No, understood, but A.D. is not pressing any waiver argument on appeal. What the district court said is Credit One preserved its- No, I remember what it said. Okay. So let me get you to talk about this paragraph about authorized users. Sure. Authorized user, within the context of this paragraph, it's very hard for me to justify pulling just sentence two out. Because you really seem to have two ideas. There's authorized user light, and there's authorized user full-blown. And authorized user light is literally anyone, including my 6-year-old granddaughter, who is using the card. Believe me, I could easily send her into a Jamba Juice, and she would have no trouble giving the card to the salesperson and getting the drink. But then it goes on. The next thing it says is someone who's at least 15 years of age. So I don't know why the language of your own agreement bars you from taking the steps that you would like to take in this case. So first off, I'm happy to address the merits of the question. I just want to point out that there are two separate grounds here. One is being bound as an authorized user under the contract. The other is direct benefits estoppel, which I don't think turns on the language of this provision. Direct benefits estoppel requires us to think that buying one Jamba Juice is enough to put you over that line from indirect to direct. And that's an aggressive position. Well, I'm happy to address that position, but let me address your question about the language of the authorized user provision. You're certainly right that it creates two different types of authorized users. No, I'm saying I don't see any language in here that does that, actually. I think that my reading of this and Credit One's reading of this is that it creates two different types. There are authorized users you can designate by saying I want my spouse to be an authorized user on the account. I would like that person to have a card. They will have all of the benefits that run to the holder of a card under my contract. You can also authorize someone to use your account by giving them your credit card. It doesn't say that, though. I mean, the first sentence is we may at our discretion issue an additional card. And then instead of talking about cards, it talks about if you allow someone to use your account, that person will be an authorized user. Well, in other words, if you're going to get a card for that person, they'll be an authorized user. And then there are these restrictions on these six things that don't need to be read off. So I don't see where you come up with two classes of authorized user. I think the first sentence refers to designation of a party who will hold their own card bearing your account number, and that person is a designated authorized user. And then the second sentence you say is completely separate, even though it's all in the same paragraph, and every other word in the paragraph deals with people who have a card. Use of your account and each card issued and so on. It's a strained reading. Well, I don't think it's a strained reading. Strained, I said. Strained. I apologize. I think there are two ways that people can use credit cards or have access to credit card accounts that are not their own. One is that they can obtain a card, a physical access device with their own name on it that gives them access to the account, and the other is by being deputized by the holder of the card to use it. So you can give it to your granddaughter, and she can make a purchase. I understand it sounds ridiculous in the context of a six-year-old, but the whole point is. She could do it. No, I get it. But when someone goes into a merchant and presents a credit card, they are representing that they have the backing of Credit One as the institution. They are going to make good on that transaction. And the person tendering the credit card. What about Judge Ripple's idea that the kid is just her mother's agent at this point? The mother could have tied the credit card to a robot and have it gone in there or to her dog. That's not the way that we've conceived of this. We've conceived of this as a direct benefit, but, of course, agency is another ground for binding a non-signatory to an agreement. Judith Serrano pays for the phone at issue in this case using her Credit One credit card. I'm not worrying about the phone. No, no, I understand that, but the mother is sort of lurking behind all the aspects of the case. And in terms of the equities here, liberating her daughter, who was, when the suit was filed, was being represented by her mother as her guardian ad litem. When her mother is the one who called using her daughter's phone to give the number to Credit One, when her mother posed as her daughter in communicating with Credit One about the calls, I don't think that the equities necessarily weigh in favor of excusing. I'm not worried about the equities in that sense. I mean, the Supreme Court has made it very clear that arbitration is a creature of agreement. And if there is an agreement to arbitrate, they've been vigorous in saying you have to arbitrate. But if there is no agreement, we come with, you know, there are construction cases where the general contractor will have an agreement to arbitrate, but one of the subcontractors doesn't. And you've got to trace through. You've got to see if there's a binding agreement between the party that you're trying to bring into arbitration. If there is, in they go. But if there isn't, they don't have to arbitrate. That's certainly right. The Supreme Court has also recognized, amidst the Italian colors and concepcion back and forth, that there are non-contractual ways of binding a non-sacred signatory to an arbitration agreement. And that includes, among others, direct benefits estoppel. And as this Court made clear in Everett and in Zurich, when you obtain a benefit that flows directly from the contract, you are bound as if you were a signatory. The only reason that A.D. was able to use the credit card to make a purchase is because of the card member agreement. She concedes in this appeal and before the district court, she was aware there were contract terms that bound the card member, her mother, to credit one. She says that on page 18 of her brief here, and on page four of her motion for reconsideration in the district court, her only complaint is that she was somehow unaware of the arbitration provision. But that doesn't relieve her of her obligation to arbitrate. Whether it was one purchase or 30 purchases, using the credit card is precisely the benefit that a card member contracts for. And so whether she was doing it at her mother's behest or not, she had the choice when she went into the store as to whether to use the credit card or whether to use cash. Did she, as a 14-year-old? Presumably she had some pocket cash on her, but the point is... I would doubt it. How often have you been around 14-year-olds? The point is that when she went in with a credit card, she represented that credit one was going to pay for her purchase. That is the very benefit that card members contract for, and that's the very benefit that she obtained presenting the credit card. This is not a case about what she did with the purchase. This is not a case about whether she had a sip of her mother's jamba juice. The benefit she obtained is the very benefit parties contract for when they enter into card member agreements with credit card issuers. The legal question that this court... I understand that on 1292b the court takes up the order, but the legal question this court granted interlocutory certification to address is what constitutes a direct benefit for purposes of direct benefits estoppel. Appellant has presented a sort of circuit split on this issue, but none exist. Every court is clear on this. The cases that he says comprise the majority rule in the Fifth Circuit, the Eighth Circuit, and the Fourth Circuit all recognize explicitly that it's a disjunctive test. You don't have to sue on the contract. You can also take a direct benefit under the contract. And so that legal question, I don't think there's any serious contest about it. I think the factual question is, was there a direct benefit here? That is reviewed at least for clear error, at best for abuse of discretion, as the court also made clear in Schur in footnote 2. Application of direct benefits estoppel is reviewed for abuse of discretion. There was no abuse of discretion finding that the purchase using the credit card was a direct benefit, and certainly there was no clear error in finding that the use of the credit card was a direct benefit sufficient to trigger the application of direct benefits estoppel. I see my time is up. I'm happy to answer any other questions.  Thank you, Your Honor. Mr. Ancorn. Thank you, Your Honor, and very briefly, we don't dispute that there was a transaction, and we're not trying to get out of the responsibility of the transaction. Ms. Serrano paid the bill or didn't pay the bill. That part is not in dispute. So when her daughter went in to complete the transaction, and again, that's more than mere semantics. That's, I think, a distinction that makes a difference. She completed her mother's transaction, one that her mother decided to engage in. Further, just really quickly, there's something of a split of the district courts. The Pereira case, where a husband is the only borrower on a loan that is used to finance an automobile, and the testimony was clear that the wife drove it at least half the time, the wife was not bound under the direct benefits estoppel doctrine. Here, we think that it should obtain as well. There's some parsing about what the benefit is and how you actually use the agreement, but we think that's pushing both the factional and legal scenario too long. Finally, because this is a mixed-question law, in fact, it should be a de novo review, not a discretionary one, and with that, we'll thank the panel and submit. Thank you very much. All right. Thank you to both counsel. We'll take the case under adjustment.